IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY A. MILTON, | : | |
| Plaintiff | : | No. 1:13-cv-02673 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| UNITED STATES BUREAU OF | : | |
| PRISONS, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court are Plaintiff Gregory A. Milton's motion for reconsideration of this Court's December 21, 2015 Order dismissing the complaint for failure to prosecute (Doc. No. 61) and Defendants' motion to dismiss and for summary judgment (Doc. No. 33). For the following reasons, the Court will grant Plaintiff's motion for reconsideration as unopposed and grant Defendants' motion to dismiss and for summary judgment.

**I.    BACKGROUND**

On January 18, 2013, Plaintiff Gregory A. Milton, an inmate at the United States Penitentiary at Beaumont, Texas, filed a complaint in the United States District Court for the District of Columbia against the Federal Bureau of Prisons ("BOP"), and several individuals employed by that agency pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1977). (Doc. No. 1.) The individuals named as defendants are as follows: (1) Charles L. Samuels, Jr., former Director of the BOP; (2) John Doe, Internal Affairs Director of the BOP; (3) John/Jane Does, Internal Affairs Staff;[1] (4)

---

[1] Plaintiff alleges that the John and Jane Doe Defendants were deliberately indifferent "to his complaint that was referred to the Office of Internal Affairs and the Office of Inspector General." (See Doc. No. 1 at 8.) This Court's review of the record reveals Plaintiff has not yet provided the identities of the John and Jane Doe Defendants. It is clear that Plaintiff has had a

N.L. Norwood, former Director of the Northeast Regional Office of the BOP; (5) Michael Nalley, former Director of the North Central Regional Office of the BOP; (6) Todd W. Cerney, Disciplinary Hearing Officer ("DHO") at the United States Penitentiary at Allenwood, White Deer, Pennsylvania ("USP-Allenwood"); (7) Carl M. Miedich, DHO at the United States Penitentiary at Florence, Colorado ("USP-Florence"); (8) George Nye, Lieutenant at USP-Allenwood; (9) Craig Johnson, Correctional Officer at USP-Allenwood; (10) M. Reeves, Correctional Officer at USP-Allenwood; (11) T. Boatman, Correctional Officer at USP-Allenwood; and (12) C. Duran-Poland, Correctional Officer at USP-Florence. (Id.)

The complaint asserts claims of denial of due process arising out of three disciplinary proceedings held at USP-Allenwood and one rehearing proceeding held at USP-Florence. (Id. at 3-8.) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). First, in January 2011, Plaintiff was charged with prohibited acts 297 (use of the telephone for abuses other than illegal activity) and 305[2] (possession of anything not authorized for retention or receipt by the inmate) ("January 2011 charges"). (Id. at 3.) During the February 22, 2011 disciplinary hearing before Defendant Cerney on the January 2011 charges, Plaintiff alleges that he was denied the right to call several witnesses, denied the ability to present evidence, subjected to charges that were enhanced without notice, and informed that his staff representative, Defendant Johnson, was chastised by Defendant Nye for providing "too much" assistance as a staff representative. (Id. at 4.) Plaintiff was sanctioned based on the January 2011 charges. (Id.)

---

reasonable opportunity to identify the John and Jane Doe Defendants. Those defendants will be terminated from this action.

[2] According to the declaration of Defendant Johnson, at the end of the February 22, 2011 disciplinary hearing, the DHO amended the code 297 charge "to that of 'Conduct Disruptive to the Orderly Running of the Facility, most like Possession of a Hazardous Tool, Code 199/108.'" (Doc. No. 40-1 at 15.) Plaintiff was found to have committed prohibited act 199/108. (Id. at 27.)

Second, Plaintiff was charged on March 3, 2011 with prohibited act 297 (use of the telephone for abuses other than illegal activity) ("March 2011 charge"). (Id.) Prior to the corresponding disciplinary hearing before Defendant Cerney, Plaintiff allegedly requested that certain evidence be presented but his staff representative Defendant Reeves did not respond to the request and Plaintiff was found to have committed the charge. (Id. at 5.) Third, on June 9, 2011,[3] Plaintiff was charged with prohibited acts 299/203 (conduct which disrupts or interferes with the security or orderly running of the institution) and 305 (possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels) ("June 2011 charges"). (Id. at 5-6.) As to the June 2011 charges, Plaintiff claims, inter alia, that his staff representative, Defendant Boatman, failed to obtain most of the evidence he requested in advance of the disciplinary hearing. (Id.) Plaintiff was found to have committed the 299/203 charge. Subsequently, after Plaintiff was transferred from USP-Allenwood to USP-Florence, Plaintiff was granted a rehearing on the June 2011 charges. During the rehearing at USP-Florence before Defendant Miedich, staff representative Defendant Duran-Poland allegedly failed to obtain evidence in advance of the rehearing at USP-Florence and Plaintiff was again found to have committed the 299/203 charge. (See id. at 6; see also Doc. Nos. 40 ¶ 208; 56 at 7.)

In his complaint, Plaintiff also alleges that: (1) Defendant Nye initially hindered his attempt to file a complaint with the Office of Inspector General and prevented the mailing of a letter to former United States Attorney General Eric Holder; and (2) Defendants Samuels, Norwood and Nalley violated his rights by failing to "formally train" staff representatives. (Id. at

---

[3] The complaint states "June 9, 2012" instead of June 9, 2011. Upon review of the record, it is clear the charges were brought on June 9, 2011. (Doc. No. 40 ¶ 202; 56 at 7.)

3, 5-6.) Plaintiff requests nominal and punitive damages from the BOP[4] and the individual defendants. (Id.) He also requests injunctive relief, including the expungement of his disciplinary record.

On April 4, 2013, the United States District Court for the District of Columbia transferred the above-captioned action to the United States District Court for the Middle District of Pennsylvania. (Doc. No. 13.) On January 15, 2015, Defendants filed a motion to dismiss and for summary judgment. (Doc. No. 33.) A brief in support of that motion, a statement of material facts, and accompanying evidentiary materials were filed on January 29, 2015. (Doc. Nos. 40, 41.) After granting Plaintiff two extensions of time to respond to Defendants' motion to dismiss and for summary judgment (Doc. No. 48; see Doc. No. 51), this Court dismissed Plaintiff's complaint for failure to prosecute and for failure to comply with a court order on December 21, 2015 (Doc. Nos. 53, 54).

Thereafter, on December 22, 2015, Plaintiff filed a declaration in opposition and a "counterstatement of material facts." (Doc. Nos. 55, 56.) On December 23, 2015, the Court granted Plaintiff 28 days to file a motion for reconsideration of the Dismissal Order. (Doc. No. 60.) On January 19, 2016, Plaintiff filed a motion for reconsideration. (Doc. No. 61.) Plaintiff was subsequently granted additional time to file a brief in support on or before June 6, 2016.

---

[4] Plaintiff appears to be suing each Defendant in both the Defendant's individual and official capacities. The Federal Government and its agencies are not subject to suit absent a waiver of sovereign immunity. See FDIC v. Meyer, 510 U.S. 471, 483 (1994); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Although Bivens recognizes a personal-capacity cause of action for damages against federal officials for violation of rights protected by the United States Constitution, Bivens does not operate as a waiver of sovereign immunity for actions against the United States and its agencies. Id. A Bivens action will lie only against named federal officers or agents in their personal, individual capacities. Id. Consequently, Plaintiff's claims for damages against the BOP and its employees in their official capacities will be dismissed.

(Doc. No. 63.) On June 2, 2016, Plaintiff filed a brief in support of his motion for reconsideration. (Doc. No. 64.) Defendants have not filed a brief in opposition to Plaintiff's motion for reconsideration. Accordingly, Plaintiff's motion for reconsideration will be granted as unopposed pursuant to Local Rule 7.6. The Court limits its analysis to the merits of Defendants' motion to dismiss and for summary judgment.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556). A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

All civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, or they risk dismissal. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To determine the sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

**B.     Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49. Thus, where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Id. at 248. Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one. Id.

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has carried this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In deciding a motion for summary judgment, the court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Moreover, the court's function is not to make credibility determinations, weigh evidence,

or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." Id.

## III.    DISCUSSION

In their motion to dismiss and for summary judgment, Defendants assert the following arguments: (1) Plaintiff's due process claims in connection with the June 2011 charges are barred by Heck v. Humphrey's favorable termination rule (Doc. No. 41 at 19); (2) the Court lacks personal jurisdiction over Defendants Samuels, Nalley, Duran-Poland, and Miedich and the United States District Court for the Middle District of Pennsylvania is not the proper venue as to those Defendants (id. at 20);[5] (3) respondeat superior cannot form "the basis for Bivens liability against Defendants Samuels, Nalley and Norwood" (id. at 23); (4) Plaintiff fails to adequately

---

[5] Defendants argue that this Court lacks personal jurisdiction over Defendants Samuels, Nalley, Duran-Poland, and Miedich. Plaintiff does not address the matter of personal jurisdiction (Doc. No. 55), and admits the portion of Defendants' statement of material facts that concerns personal jurisdiction (Doc. No. 56 at 7). "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). Here, as to specific jurisdiction, the allegations Plaintiff raises against Defendants Duran-Poland and Miedich all relate to when Plaintiff was housed in Colorado at USP-Florence. (See Doc. No. 1 at 1, 6.) As for Defendant Samuels, Plaintiff's allegations concern the training of staff representatives in general, not with contacts that relate to or arise out of out of the Commonwealth of Pennsylvania. (Id. at 8.) Second, as to general jurisdiction, the parties do not dispute that Defendants Duran-Poland and Miedich do not reside, work, have business dealings, or own property in Pennsylvania. (Doc. No. 40 ¶¶ 211-214; 56 at 7.) There is also no dispute that Defendant Samuels "did not reside, work, or own property" in Pennsylvania at any time period alleged in the complaint. (Doc. No. 40 ¶¶ 215-216; 56 at 7.) Although Plaintiff has not satisfied its burden of showing that personal jurisdiction exists, the Court declines to transfer the above-captioned action as to Defendants Samuels, Duran-Poland and Miedich because, even if personal jurisdiction existed, Plaintiff's claims against Defendant Duran-Poland and Miedich will be dismissed pursuant to the favorable termination rule and Plaintiff's claims against Defendant Samuels and Nalley will be dismissed for failure to adequately allege supervisory liability.

allege a First Amendment denial of access to the courts claim (id. at 25); (5) Plaintiff was not denied due process in the preparation and conduct of the disciplinary proceedings in connection with the January 2011 and March 2011 charges (id. at 27); and (6) Defendants are entitled to qualified immunity (id. at 32). The Court first addresses whether Plaintiff's due process claims relating to the June 2011 charges are barred by Heck v. Humphrey's favorable termination rule.

### A.     Favorable Termination Rule

Defendants argue that Plaintiff's Fifth Amendment due process claims relating to the June 2011 charges are barred by the favorable termination rule. (Doc. No. 41 at 19-20.) Plaintiff does not address the favorable termination rule in his declaration in opposition (Doc. No. 55), and admits to the section of Defendants' statement of material facts relating to the June 2011 charges (Doc. No. 56 at 7).

> In Heck v. Humphrey, the United States Supreme Court held, in pertinent part, as follows:
>
> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994) (footnote omitted). In Edwards v. Balisok, the Supreme Court extended Heck "to prison disciplinary sanctions, holding that a prisoner cannot bring a suit under § 1983 where the success of that suit would 'necessarily imply the invalidity of the deprivation of his good-time credits.'" Schreane v. Seana, 506 F. App'x 120, 123 (3d Cir. 2012) (quoting Edwards v. Balisok, 520 U.S. 641, 646-48 (1997)). The Heck rule also applies to "requests for

equitable and declaratory relief" and to claims asserted under Bivens. Id. (internal citations omitted).

Here, Plaintiff challenges the July 28, 2011 disciplinary hearing at USP-Allenwood before Defendant Cerney and the April 5, 2012 disciplinary rehearing at USP-Florence before Defendant Miedich. (See Doc. No. 1 at 5-6.) The two hearings were conducted in connection with the June 2011 charges against Plaintiff. (Id.) Specifically, Plaintiff alleges that Defendant Boatman failed to assist him in obtaining evidence before July 28, 2011 hearing and that Defendant Duran-Poland failed to obtain information for April 5, 2012 rehearing. (See id. at 5-6.) Plaintiff seeks money damages from Defendants and "injunctive relief in the form of expungement of his disciplinary record." (Id. at 8-9.)

Upon review of the record, there is no dispute that the July 28, 2011 hearing and the April 5, 2012 rehearing resulted in the loss of twenty seven days of good conduct time. (Doc. No. 40 ¶¶ 204, 209; 56 at 7.) Accordingly, Plaintiff's claims that relate to the June 2011 charges necessarily imply the "the invalidity of the punishment imposed" because (1) Plaintiff challenges two disciplinary proceedings that resulted in the loss of good time credits, see Schreane, 506 F. App'x at 123; (2) the "loss of good conduct time affects the duration of [Plaintiff's] confinement" Wilkins v. Bittenbender, No. 06-2827, 2007 WL 708993, at *1 (3d Cir. Mar. 7, 2007) (citing Edwards, 520 U.S. at 646-48)). Plaintiff's appeals of the April 5, 2012 rehearing were denied (Doc. Nos. 40 ¶ 210; 56 at 7), and Plaintiff has not come forward with evidence showing that the hearings have since been found unlawful or otherwise invalidated. Therefore, Plaintiff's Fifth

Amendment due process claims related to the June 2011 charges are barred under Heck and will be dismissed. See Schreane, 506 F. App'x at 123.

In accordance with Third Circuit's jurisprudence, the Court will dismiss Plaintiff's due process challenge, regarding the June 2011 charges, without prejudice to Plaintiff challenging his "loss of his good time credits through the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2241." Schreane, 506 F. App'x at 123. However, the Court declines to grant Plaintiff leave to amend to reassert his due process challenge in an amended complaint as futile and, as a consequence, will dismiss Defendants Boatman, Duran-Poland, and Miedich whose conduct alleged in the complaint was limited to either the July 28, 2011 disciplinary hearing or the April 5, 2012 disciplinary rehearing. (See Doc. No. 1 at 6.)

### B. Access to the Courts and Mail Tampering

Defendants also argue that Plaintiff's complaint fails to adequately allege a denial of access to the courts claim. (Doc. No. 41 at 25.) Defendants contend that Plaintiff failed to allege "an actual injury as he does not identify any legal matter that was obstructed or negatively impacted due to the alleged 'tampering' or 'delay' of the mail at issue." (Id. at 26.)

The Third Circuit has held that prisoners "'do not forfeit their First Amendment right to use of the mails,' and that a 'pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech.'" Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (quoting Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995)). However, "courts have also found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, [are] insufficient to

establish a First Amendment violation." Booze v. Wetzel, No. 1:13-CV-2139, 2016 WL 4191041, at *4 (M.D. Pa. Apr. 5, 2016) (Carlson, M.J.) (collecting cases).

Here, in his complaint, Plaintiff alleges that Defendant Nye prevented the mailing of a letter to former United States Attorney General Eric Holder. The complaint also asserts that Defendant Nye "initially hindered" the mailing of a separate letter to the Office of Inspector General ("OIG"). (Doc. No. 1 at 6-7.) The Court will dismiss Plaintiff's claims related to the alleged prevention or hindering of the mailing of two letters for two reasons. First, if the Court were to construe Plaintiff's claims as asserting a violation of his mail privileges and to accept the allegations as true, Plaintiff's claims fail to adequately allege a First Amendment violation. Edney v. Haliburton, 658 F. App'x 164, 167 (3d Cir. 2016) ("An isolated incident of mail tampering is generally insufficient to state a First Amendment violation.") (citing Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)). Plaintiff's allegation that one letter was prevented from being sent and that a second letter was "initially hindered" does not permit this Court to reasonably infer the existence of a pattern or practice of mail interference. Davis, 320 F.3d at 351.

Second, if the Court were to infer that both letters were legal mail and that Plaintiff seeks to allege a denial of access to the courts claim, Plaintiff's allegations do not survive Rule 12(b)(6) because Plaintiff has failed to allege that the interferences caused an actual injury. See Watson v. Sec'y Pennsylvania Dep't of Corr., 567 F. App'x 75, 77-78 (3d Cir. 2014) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury."). Plaintiff does not identify a legal claim or preceding that was negatively impacted by the alleged interference. (Doc. No. 1 at 6-7.) In fact, the OIG appears to have received the "initially

hindered" letter because Plaintiff alleges that the OIG apparently referred the matter to the BOP's Office of Internal Affairs. (See id.) Accordingly, the Court will dismiss Plaintiff's claims related to the alleged interference with Plaintiff's mail for failure to state a claim and deny Plaintiff leave to amend his claims related to the two letters as futile.[6]

### C. Misconduct Charges and Disciplinary Hearings.

The Court next turns to Plaintiff's allegations that Defendants Nye, Johnson, Reeves and Cerney violated Plaintiff's due process rights in connection with the January 2011 and March 2011 charges. Defendant maintains that Plaintiff was afforded due process during the two disciplinary hearings at USP-Allenwood corresponding to the January 2011 and March 2011 charges. (Doc. No. 41 at 31.) Plaintiff asserts that he "was not allowed the protections of his Wolff rights" (Doc. No. 1 at 4),[7] and responds, in his declaration in opposition, that he "was not allowed to present witnesses or documentary and video evidence he sought to be presented through his Rep[resentative] or otherwise" (Doc. No. 55).

An inmate "facing the deprivation of a constitutionally cognizable liberty interest following an administrative hearing has a due process right to certain procedural protections.

---

[6] For the foregoing reasons, even if the Court were to assume both letters were legal mail and to accept that one letter was prevented from being mailed and a second letter was delayed in its mailing, the Court is unpersuaded that Plaintiff could cure the pleading defects in his First Amendment mail tampering or First Amendment denial of access to the courts claim.

[7] Plaintiff also alleges that his rights under Brady were violated by Defendants Johnson, Reeves, Boatman, Duran-Poland, Cerney, Miedich, and Nye. (Doc. No. 1 at 7.) Upon review of the case law, the Court is unpersuaded that Brady applies to prison disciplinary hearings. See, e.g., Kenney v. Barron, 239 F. App'x 494, 495 (11th Cir. 2007) ("We have never held that the principles of Brady extend to prison disciplinary hearings . . . .); Wise v. Carpenter, 838 F.2d 469 (4th Cir. 1988) ("Brady's broad disclosure requirements simply cannot be reconciled with the needs and exigencies of the institutional environment.").

Specifically, at a prison disciplinary hearing, due process requires that the inmate: (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded the opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate representative; and (5) receive a written decision explaining the decision-maker's conclusions." Crosby v. Piazza, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974)). "However, an inmate's due process rights are not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

"Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). For example, courts within this Circuit have found no merit in procedural due process claims involving disciplinary segregation. See Smith v. Messinger, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); Griffin v. Vaughn, 112 F.3d 703, 706-708 (3d Cir. 1997) (no liberty interest avoiding fifteen month placement in administrative custody because said confinement was not atypical); see also Ayers v. Campbell, 267 F. App'x 176, 177 (3d Cir. 2008) (loss of privileges, including visitation, for eight months not an atypical and significant hardship).

First, as to the January 2011 charges, Plaintiff's was accused of the use on 18 occasions of a cell phone which was surreptitiously introduced into the prison. (See Doc. No. 40 ¶¶ 15-16, 19;

see Doc. No. 56 at 2.) The parties do not dispute that Defendant Cerney imposed sixty days disciplinary segregation, twenty-four months loss of telephone privileges, and twenty-four months loss of email privileges. (Doc. Nos. 40 ¶ 93; 40-1 at 27; 56 at 5.) In fact, Plaintiff responds that "[a]lthough Plaintiff was sanctioned with sixty (60) days disciplinary segregation, he was never placed in the Special Housing Unit (SHU) and was released back to general population." (Doc. No. 56 at 5.) There is no dispute that Plaintiff was not sanctioned with a loss of good time credits in connection with the January 2011 charges. (Doc. No. 40-1 at 71.)

Second, as to the March 2011 charge, Plaintiff was accused of soliciting another inmate to call an individual and pass information on Plaintiff's behalf to that individual. Similarly, as to that charge, Plaintiff admits that he received thirty days disciplinary segregation, six months loss of telephone privileges and six months loss of email privileges. (Doc. No. 40 at 31; Doc. No. 56 at 7.) There is no dispute that Plaintiff was not sanctioned with a loss of good time credits in connection with the March 2011 charge. (Doc. No. 40-1 at 99.) Therefore, as a matter of law, Plaintiff's due process rights were not triggered by the disciplinary segregation, loss of telephone privileges, and loss of email privileges Plaintiff received for the January 2011 and March 2011 charges because those sanctions do not impose atypical and significant hardship on Plaintiff. See, e.g., Passe v. Grondolsky, No. 09-1209, 2010 WL 1539821, at *7 (D.N.J. Apr. 14, 2010).

Alternatively, even if Plaintiffs' due process rights were triggered, there is no dispute that Plaintiff: (1) appeared before "impartial decision-making body;" (2) received written notice of the January 2011 and March 2011 charges twenty-four hours prior to the hearing (Doc. Nos. 40 ¶¶ 40-41; 40-1 at 37, 66, 68, 97; 56 at 4; 56-1 at 34); (3) was permitted assistance from staff

representatives Johnson and Reeves; and (4) received a written statement detailing the evidence and reasons for the disciplinary sanctions (Doc. Nos. 40 ¶¶ 100-104, 198-201; 56 at 5, 7).

As to Plaintiff's opportunity to call witnesses and present evidence, there is a dispute about Plaintiff's request, prior to the February 22, 2011 hearing, that Defendant Johnson call witnesses and acquire copies of surveillance videos. (Doc. Nos. 40 ¶¶ 21-31, 37, 44-47, 54-55; 55 at 2-3; 56 at 2-3.) Specifically, Plaintiff asserts that he was denied his request to call as witnesses the eighteen or nineteen "unknown" persons "he allegedly called on the cell phone." (See Doc. No. 56 at 2, 4.) Plaintiff also states that he requested in writing a copy of the surveillance videos and the appearance of Defendant Nye as a witness. (Id. at 2.) In his declaration, Defendant Johnson stated that he does "not recall" Plaintiff requesting "'19 unknown' witnesses to appear" and that Plaintiff's surveillance video request was overly broad and irrelevant. (Doc. No. 40-1 at 12-13.)

"Although Wolff affords inmates an opportunity to call witnesses in their defense, it does not guarantee them the unfettered right to call any witness or present any evidence they wish, regardless of its relevance or necessity." Reyes v. Zickefoose, No. 1:14-CV-1065, 2016 WL 26053, at *4 (M.D. Pa. Jan. 4, 2016) (Jones, J.) (citing Wolff, 418 U.S. at 566-67). BOP's policy provides the "DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available." See 28 C.F.R. § 541.8.f.2. Therefore, the Court finds no genuine issue of material fact over whether Plaintiff was afforded procedural protections under Wolff, given the lack of relevance of calling nineteen unknown individuals, the lack of necessity of obtaining copies of surveillance videos, and the lack of necessity of calling Defendant Nye as a witness when his "statement was adequately summarized in the incident report" Defendant Nye

16

wrote. (Doc. Nos. 40 ¶¶ 69-70; 40-1 at 38-41.) Accordingly, summary judgment will be entered in favor of Defendants Nye, Johnson, Reeves, and Cerney on Plaintiff's due process claims relating to the January 2011 and March 2011 charges.

### D.     Personal Involvement of Defendants Samuels, Nalley and Norwood.

The Court next turns to Defendants' argument that Defendants Samuels, Nalley and Norwood had insufficient personal involvement. Plaintiff responds that there "is a material dispute as to the fact that there is no training program for staff reps charged with assisting federal inmates with the exercise of their due process rights under Wolff v. McDonnell and BOP policy." (Doc. No. 55 at 3.)

"[C]ourts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates." Mutschler v. Downs, No. 3:15-CV-02015, 2016 WL 4689048, at *4 (M.D. Pa. Mar. 21, 2016). "It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement." Maxton v. Pigos, No. 1:13-CV-1213, 2013 WL 2896839, at *3 (M.D. Pa. June 12, 2013) (citing Sutton v. Rasheed, 323 F.3d 236, 249-250 (3d Cir. 2003)).

Here, Plaintiff seeks to impose liability on Defendants Samuels, Nalley and Norwood based on their alleged "decision not to formally train any particular BOP employee concerning their legal duty as a staff rep in a DHO proceeding" and based on the contention that their "callous and reckless disregard of the supervisory authority in the BOP" resulted in staff representatives not

knowing their duties.  (Doc. No. 1 at 8.)  Plaintiff's complaint fails adequately allege that Defendants Samuels, Nalley and Norwood were personally involved in the alleged constitutional violations.

Accordingly, this Court will dismiss Plaintiff's claims against Defendants Samuels, Nalley and Norwood for failure to adequately allege their supervisory liability.  The Court will also decline to grant Plaintiff leave to amend his complaint given that Plaintiff has failed to successfully allege any constitutional violation against the individual, subordinate Defendants.  See Cardenas v. Lewis, 66 F. App'x 86, 90 (9th Cir. 2003) (citing Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996)).

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's motion for reconsideration as unopposed and grant Defendants' motion to dismiss and for summary judgment.